MARTY GINSBERG, et al.,      )
          )
      Plaintiff(s),      )
          )
    vs.      )      Case No. 4:08CV01375 JCH
          )
INBEV SA/NV,      )
ANHEUSER-BUSCH COMPANIES, INC. and )
ANHEUSER-BUSCH, INC.,      )
          )
      Defendant(s).      )

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction, filed November 3, 2008. (Doc. No. 41). The matter is now fully briefed and ready for disposition.

## BACKGROUND

Plaintiffs originally filed their Complaint for Injunctive Relief to Prohibit the Acquisition of Anheuser-Busch by InBev as a violation of Section 7 of the Clayton Antitrust Act 15 U.S.C. §18 ("Complaint" or "Compl.") against Defendants InBev NV/SA ("InBev"), Anheuser-Busch Companies, Inc. and Anheuser-Busch, Inc. (collectively referred to "Anheuser-Busch") on September 10, 2008 (Doc. No. 1). In their Complaint, Plaintiffs allege that "the acquisition may, and most probably will, substantially lessen competition and/or tend to create a monopoly in the production and sale of beer in the United States." Compl., ¶ 1. Plaintiffs allege that they are "consumers and purchasers of Anheuser-Busch's beers who are threatened with loss and damage in the forms of higher prices, fewer services, fewer competitive choices, deterioration of products and product diversity, suppression and destruction of smaller actual competitors through exclusive distribution, full-line forcing, and the like, and other anticompetitive effects and consequences that may, and most probably will, result from the

elimination of the actual and potential competition of InBev if the acquisition were to be consummated." Id., ¶ 3. In their Complaint, Plaintiffs admit that InBev is "not competing directly in the United States beer market" but claims that InBev is "well equipped and well financed to be able to enter the market *de novo*, building its own breweries and establishing its own national distribution network." Id., ¶¶ 14, 17; see also Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Preliminary Injunction ("Plaintiffs' Memorandum"), Doc. No. 41, p. 7 (InBev is "generally not competing in the United States beer market"). Plaintiffs' supposed basis for a Clayton Act violation is "InBev's presence on the periphery of the market--as a perceived potential and actual entrant as well as a potential and actual dominant entrant," which, according to Plaintiffs, "has been an important consideration in the pricing and marketing decisions of Anheuser-Busch." Compl., ¶ 15. Plaintiffs make the assertions that, in the absence of the proposed acquisition, InBev "will probably enter the United States market *de novo*," ""will probably establish a new distribution network in the United States wholly apart from the Anheuser-Busch distribution network," "will probably build new breweries wholly apart from Anheuser-Busch's breweries," "will probably lower prices or call to others not to increase their prices," "will increase jobs, diversity of products for consumers, and create a new competition in the beer industry in the United States for the benefit and welfare of consumers." Id., ¶¶ 139-43. In sum, Plaintiffs allege that "[t]he proposed acquisition by InBev will cause harm to consumers, including Plaintiffs, by charging higher prices for beer and diminishing competition. Consumers, including Plaintiffs, will thus pay more than would be the case in the absence of Defendants' acquisition." Id., ¶ 158.

In their Complaint, Plaintiffs acknowledge that, on or around July 14, 2008, InBev and Anheuser-Busch announced that they had agreed to terms by which InBev would acquire Anheuser-Busch. Id., ¶ 125. Plaintiffs, however, did not file their Complaint until nearly two months later.

(Doc. No. 1). Then, two months after filing their Complaint, Plaintiffs finally filed their Motion for Preliminary Injunction. (Doc. No. 41).

**DISCUSSION**

**A.    Legal Standard**

The Eighth Circuit has held that, "[i]n deciding a motion for a preliminary injunction, a district court balances four factors: (1) the likelihood of the movant's success on the merits; (2) the threat of irreparable harm to the movant in the absence of relief; (3) the balance between that harm and the harm that the relief would cause to the other litigants; and (4) the public interest." Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003) (citing Dataphase Sys., Inc. v. CL Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981)). A preliminary injunction is an extraordinary remedy, and the burden of establishing the propriety of an injunction is on the movant. Watkins, 346 F.3d at 844 (internal citations omitted). "The burden on the movant 'is a heavy one where, as here, granting the preliminary injunction will give [the movant] substantially the relief it would obtain after a trial on the merits.'" Sanborn Mfg. Co., Inc. v. Campbell Hausfeld/Scott Fetzer Co., 997 F.2d 484, 486 (8th Cir. 1993) (alteration in original) (quoting Dakota Indus. Inc. v. Ever Best Ltd., 944 F.2d 438, 440 (8th Cir. 1991)). "A showing of a fair or tenable chance of success on the merits will not suffice for injunctive relief. ... Section 7 deals in probabilities not ephemeral possibilities." FTC v. Tenet Health Care Corp., 186 F.3d 1045, 1051 (8th Cir. 1999) (citation omitted).

**B.    Plaintiffs are Unlikely to Succeed on the Merits Based Upon the Evidence Before the Court**

"Section 7 of the Clayton Act prohibits acquisitions that serve 'substantially to lessen competition, or to tend to create a monopoly.'" Midwestern Mach. Co. v. Northwest Airlines, Inc., 392 F.3d 265, 269 (8th Cir. 2004) (quoting 15 U.S.C. § 18). Section 7 exists to arrest mergers that

could produce anti-competitive results. Midwestern Mach. Co., 392 F.3d at 269 (citing Concord Boat Corp. v. Brunswick Corp., 207 F.3d 1039, 1050 (8th Cir. 2000), cert. denied, 531 U.S. 979 (2000)).

As previously stated, Plaintiffs' theory of an alleged Clayton Act violation is premised on the "perceived potential competition" doctrine and the "actual potential competition" doctrine. (Compl., ¶¶12-19, 99-101, 139-143; Plaintiffs' Memorandum, pp. 7-8). Plaintiffs argue that "InBev is well equipped and well financed to be able to enter the market de novo, building its own breweries and establishing its own national distribution network." (Plaintiffs' Memorandum, p. 7). The facts presented, however, demonstrate InBev not only was not poised to enter the United States beer market, but had instead taken steps to extract itself from the market. Statements made support a finding that Anheuser-Busch did not perceive InBev as a competitor and that InBev did not intend to compete for the United States beer market. Anheuser-Busch has never believed that InBev was a threat to or a potential threat to enter the U.S. beer market with its own breweries and distribution system. (InBev N.V./S.A.'s Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("InBev Memorandum"), Doc. No. 59, p. 21, Declaration of David A. Peacock ("Peacock Decl."),[1] ¶ 10). Likewise, in 2006, InBev's then co-CEO stated, "we're not going head-to-head with Budweiser, Miller, and Coors. That would be suicide." (Anheuser-Busch's Memorandum in Opposition to Plaintiffs' Motion for Preliminary Injunction ("Anheuser-Busch Memorandum"), Doc. No. 48, p. 2, Declaration of Derek Howard ("Howard Decl.")).

InBev's actions have demonstrated further that InBev did not intend to enter the U.S. beer market de novo. In May 2006, InBev sold its only U.S. brand, Rolling Rock, to Anheuser-Busch. (Anheuser-Busch Memorandum, p. 2, Peacock Decl., ¶12). InBev then sold its only U.S. brewery in

---

[1]Mr. Peacock is currently Anheuser-Busch's Vice-President of Marketing, and will be the president of Anheuser-Busch after the acquisition closes.

LaTrobe, Pennsylvania, to City Brewing of LaCrosse, Wisconsin. (Anheuser-Busch Memorandum, p. 7, Declaration of Erika Anderson ("Anderson Decl."), Ex. D thereto). InBev sold Rolling Rock and its LaTrobe brewery in order to "focus on the high-grown import brands in [its] portfolio." (Anheuser-Busch Memorandum, p. 7, Anderson Decl., Ex. F thereto). Further, InBev and Anheuser-Busch have entered into an Import Agreement whereby InBev has designated Anheuser-Busch as the exclusive U.S. distributor for InBev's European brands sold in the U.S. (Anheuser-Busch Memorandum, p. 7, Peacock Decl., ¶13). Under this agreement, Anheuser-Busch has the exclusive right to "advertise, distribute, market, promote and sell" InBev's European brands in the United States. (Anheuser-Busch Memorandum, p. 8, Peacock Decl., ¶ 13, Ex. 2, ¶¶ 2.2, 6.4).

Anheuser-Busch also put forth evidence that, contrary to Plaintiffs' suggestion, InBev's current position as a "perceived potential competitor" or "actual potential competitor" does not affect the U.S. beer market. Rather, Anheuser-Busch's "pricing, marketing and other competitive decisions in the U.S. are, and historically have been, based upon a number of factors, including its operating costs, the pricing and marketing activities of existing U.S. competitors, the increase in the CPI, and the flat sales growth rate for beer in the U.S." (Anheuser-Busch Memorandum, p. 8 (citing Peacock Decl., ¶9)). Thus, InBev's "presence on the periphery of the market" does not affect Anheuser-Busch's competitive behavior. (Anheuser-Busch Memorandum, p. 8 (citing Peacock Decl., ¶10)).

In addition, an analysis of InBev's infrastructure and finances and the United States' beer market demonstrate that InBev's purported *de novo* entry into the United States beer market would be financially infeasible and unprofitable. (InBev Memorandum, p. 9). As acknowledged by Plaintiffs, the United States beer market is characterized by "significant barriers to entry." (Compl., ¶157). The evidence presented by InBev demonstrates that it would be extremely expensive and most likely unprofitable for it to compete in the United States. InBev states that, to compete in the United

States, it would, at a minimum, need "to construct a number of breweries, create a distribution network of sufficient scale and efficiency, and build a national marketing campaign to create and promote its brand and to compete with existing brands." (InBev Memorandum, p. 18 (citing Peacock Declaration, ¶16)). Defendants' expert has attested that "the investment required to construct such an infrastructure would be enormous and unprofitable." (Anheuser-Busch Memorandum, p. 18 (citing Froeb Declaration,[2] ¶¶7(B), 53-56)).[3] Further, *de novo* entry is extremely unlikely where, as in the U.S. beer market, there is "a stable market or one expanding at a comparatively glacial pace." United States v. Siemens Corp., 621 F.2d 499, 507 (2d Cir. 1980) (citation omitted); Federal Trade Comm'n v. Atlantic Richfield, 549 F.2d 289, 294, n. 8 (4th Cir. 1977) ("this market is not rapidly expanding but presently is stagnant, thereby lessening the case for prohibition").

In response, Plaintiffs have offered no proof that any current beer producer or distributor views InBev as a potential entrant into the United States beer market. (See Anheuser-Busch Memorandum, p. 17, n. 22). Rather, Plaintiffs conclude, with no supporting citation, that "InBev's presence on the periphery of the market ... has been an important consideration in the pricing and marketing decisions of Anheuser-Busch and other American brewers or importers in the United States." (Plaintiffs' Memorandum, p. 7).

---

[2] Dr. Luke Froeb is a professor of economics at Vanderbilt University's Owen Graduate School of Management, formerly Chief Economist at the Federal Trade Commission and an economist at the Antitrust Division of the Department of Justice. (InBev Memorandum, p. 2, n. 4).

[3] In Plaintiffs' response, Plaintiffs criticize Defendant's expert based upon some criticism from another judge in another case. (See Doc. No. 74, pp. 2-3). Based upon this criticism, Plaintiffs argue that "Defendants['] evidence seems to be worthless," and that, although they have yet to produce an expert (or rebut the claims of Defendants' expert), "any expert provided to this Court by Plaintiffs would certainly be credible." (Doc. No. 74, pp. 2-3). Plaintiffs have neither identified who they might employ as a potential expert nor identified the opinions that expert would express. Given the speculative nature of Plaintiffs' theory of this case and Plaintiffs' reluctance to provide any expert support for their claims, Plaintiffs' criticism is unpersuasive.

Plaintiffs rely principally on <u>United States v. Falstaff</u>, 410 U.S. 526 (1973) to support their legal theory that InBev is a "potential competitor" in the United States beer market. The Court in that case held that "the District Court failed to give separate consideration to whether Falstaff was a potential competitor in the sense that it was so positioned on the edge of the market that it exerted beneficial influence on competitive conditions in that market." <u>Id</u>. at 533. The Court remanded the case for a "proper assessment of Falstaff as an on-the-fringe potential competitor." <u>Id</u>. at 537. The Court determined that "[t]he specific question with respect to this phase of the case is not what Falstaff's internal company decisions were but whether, given its financial capabilities and conditions in the New England market, it would be reasonable to consider it a potential entrant into that market." <u>Id</u>. at 533.

Here, in contrast, InBev's "financial capabilities and conditions in the ... market" weigh against granting Plaintiffs' Motion for Preliminary Injunction. As demonstrated above, the United States beer market is not poised for a *de novo* entrant. Further, while InBev has strong financial backing and capital, it has provided sufficient evidence of the enormous costs required for a possible entry into the United States beer market in comparison with the weak prospectus for significant, if any, increased profits. In contrast to <u>Falstaff</u>, InBev has provided objective evidentiary support for its claim that is was not a potential de novo entrant into the United States beer market.[4]

In sum, this Court views Plaintiffs' characterization as a perceived potential or actual potential competitor in the U.S. beer market as purely speculative and the evidence presented is insufficient to

---

[4]One of the criticisms in the <u>Falstaff</u> case was that the District Court failed to address the "economic facts about Falstaff and the New England market in order to determine whether in any realistic sense Falstaff could be said to be a potential competitor on the fringe of the market with likely influence on existing competition." <u>Falstaff Brewing Corp.</u>, 410 U.S. at 533-534. In contrast, Defendants have provided significant economic facts to support a finding that InBev cannot realistically be considered a "potential competitor on the fringe market" of the United States.

warrant granting Plaintiffs' Motion for Preliminary Injunction or holding a hearing regarding their Motion.  Cf. FTC v. Procter & Gamble Co., 386 U.S. 568, 581 (1967) (Supreme Court held that the acquiring company at the edge of the market exerted "considerable influence" on the market because "market behavior . . . was influenced by each firm's predictions of the market behavior of its competitors, actual and potential"; "barriers to entry . . . were not significant" as to the acquiring company; because "the number of potential entrants was not so large that the elimination of one would be insignificant"; and because the acquiring firm was the most likely entrant).  Thus, the evidence presented demonstrates that it is overwhelmingly likely that Plaintiffs cannot succeed on the merits of their case and Plaintiffs' Motion for Preliminary Injunction is  denied.

## C. The Remaining Factors (Threat of Irreparable Harm, Balance of Harms and Public Interest) Do Not Support Entry of Preliminary Injunctive Relief.

1. Plaintiffs cannot demonstrate irreparable harm.

A private plaintiff seeking to enjoin a proposed merger is not entitled to a presumption of irreparable harm.  State of N.Y. v. Kraft Gen. Foods, Inc., 862 F. Supp. 1035, 1037 (S.D.N.Y. 1994). Rather, the movant must show the threat of irreparable harm.  Dataphase Sys., 640 F.2d at 114, n. 9. As noted by Defendants, "bare allegations of what is likely to occur are insufficient to establish irreparable injury."  (Anheuser-Busch Memorandum, p. 23 (quoting Outcomes Pharm. Health Care, L.C. v. Nat'l Cmty. Pharmacists Ass'n, No. 4:05-cv-00682, 2006 U.S. Dist. LEXIS 92927, *35 (S.D. Iowa Dec. 22, 2006) (citing Packard Elevator v. Interstate Commerce Com., 782 F.2d 112, 115 (8th Cir. 1986)).

Here, Plaintiffs have provided no support for their claim of irreparable harm.  Plaintiffs allegedly are beer consumers and drinkers, purportedly concerned about a potential increase in price and decrease in variety of beer choices and beer quality.  This Court finds that such concerns are purely speculative based upon the evidence presented.  The only evidence of a potential price increase

and quality decrease are a few stray remarks, which were made prior to the acquisition. (Plaintiffs' Memorandum, p. 1-3, 18-19; see also Anheuser-Busch Memorandum, p. 3 (citing Peacock Decl., ¶¶17-19) (noting that the price increases were planned prior to the merger and went into effect pre-merger)).

In contrast to the Plaintiffs' lack of evidence, Defendants have put forth evidence that no harm will inure against the Plaintiffs based upon this acquisition. The marginal increase in market concentration that would result from adding InBev's 0.7% share to Anheuser-Busch's 48.2% share will not increase the combined firm's pricing power beyond that which is already possessed by Anheuser-Busch alone. (InBev Memorandum, p. 25 (citing Declaration of Dr. Kenneth G. Elzinga, ¶40)). Finally, there is no evidence that Anheuser-Busch's current competitors, such as MillerCoors, will be unable to restrain Anheuser-Busch from further price increases. (InBev Memorandum, pp. 25-26). Any speculation as to potential increases in beer prices is "too remote" to warrant injunctive relief. Goff v. Harper, 60 F.3d 518, 521 (8th Cir. 1995).

2.      The Balance of the Hardships Require Denial of Injunctive Relief.

At issue in this case is InBev's acquisition of Anheuser-Busch for approximately $52 billion dollars. (Compl., ¶1). This acquisition has been approved of by 96% of the shareholders of Anheuser-Busch.[5] The acquisition was also approved by the shareholders of InBev and InBev reached an agreement with the U.S. Department of Justice for completion of the acquisition.[6] InBev has presented evidence that its financing commitments expire as of March 20, 2009 and, thus, any delay could

[5]Duane D. Stanford, "Anheuser-Busch Shareholders Approve InBev Takeover," at http://www.bloomberg.com/apps/news?pid=20601103&sid=ajxQuvwPWAVw&refer=us (last visited on November 18, 2008).

[6] "InBev Completes Acquisition of Anheuser-Busch," at http://www.marketwatch.com/news/story/InBev-Completes-Acquisition-Anheuser-Busch/story.aspx?guid={88DDE93E-65B9-49AF-886B-31898776F588} (visited on November 18, 2008).

potentially jeopardize its financing.  (InBev Memorandum, p. 27 (citing Declaration of Carlos Britto, ¶ 14).  Similarly, Anheuser-Busch shareholders would be harmed by any delay in receiving the premium payment that InBev is offering for the Anheuser-Busch's stock.  (InBev Memorandum, pp. 27-28).  Anheuser-Busch shareholders could lose $18 billion if the transaction does not proceed. (Anheuser-Busch Memorandum, p. 4 (citing Peacock Decl., ¶¶ 23-24)).  In contrast, Plaintiffs have neither posted, nor offered to post, any type of bond to support their claims.  The risk of harm weighs greatly in favor of Defendants.

       3.      The Public Interest Weighs in Favor of Denying Injunctive Relief.

The Court has a strong interest in preserving free operation of the nation's markets and insuring that it does not unduly restrain free enterprise.  <u>Tenet Health Care</u>, 186 F.3d at 1055.  Here, where Plaintiffs have failed to demonstrate that there will be any real, palpable harm to Plaintiffs, the Court will deny preliminary injunctive relief.

<strong><u>CONCLUSION</u></strong>

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction (filed November 3, 2008) is **DENIED**.

This Order shall continue in full force and effect until the Court issues a final ruling on the merits of this case.

Dated this <u>18th</u> day of November, 2008.


                        /s/ Jean C. Hamilton

                        UNITED STATES DISTRICT JUDGE